**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SANTIAGO MEDINA, | : | MOTION TO VACATE |
| BOP No. 60905-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:11-CV-4431-ODE-ECS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:09-CR-191-4-ODE-ECS |

### **FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on Santiago Medina's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody [Doc. No. 320], Medina's supporting memorandum [Doc. No. 320-1], Medina's amendment [Doc. No. 322], the government's response [Doc. No. 325], and Medina's reply [Doc. No. 327]. The dispositive question in this case is whether Medina entered a knowing and voluntary plea of guilty, sufficient to mandate enforcement of the waiver of appeal and collateral attack rights that was included in his final plea agreement. [Doc. No. 284-1]. For the following reasons, the undersigned concludes that Medina's guilty plea and entry into the plea agreement were voluntary and knowing, recommends that Medina's § 2255 motion be denied, based upon the waiver of collateral attack rights in that plea agreement, and further recommends that no certificate of appealability be issued.

In 2009, Medina and others were indicted for serious drug trafficking and money laundering crimes. See [Doc. Nos. 1, 122]. At a stage when only one of his co-defendants had pled guilty, Medina's retained counsel persuaded the government that it would be difficult to establish the quantity of cocaine that Medina had distributed. On March 25, 2010, Medina and the government entered into a binding plea agreement limiting Medina's sentencing range to just 135 to 168 months and allowing Medina "the opportunity to withdraw his guilty plea" if the Court concluded his sentencing range should be higher. [Doc. No. 234-1 at 5]. That plea agreement contained a waiver of Medina's direct appeal and collateral attack rights. [Id. at 9]. During the plea colloquy, the Honorable Orinda D. Evans drew Medina's attention to the direct appeal waiver, but did not expressly mention the collateral attack waiver. [Doc. No. 324 at 10]. Later, the overwhelming factual basis for finding Medina guilty of drug trafficking was summarized, and Medina conceded the accuracy of those facts. [Id. at 11-14]. Medina conceded as well that he wished to give up his right to have the government prove the elements of the crime he committed at trial. [Id. at 17]. Finally, Medina stated that he had no questions, and Judge Evans accepted the guilty plea after finding that it was "tendered freely and voluntarily" and supported by an adequate factual basis. [Id. at 18].

AO 72A
(Rev.8/82)

In July 2010, at his initial sentencing hearing, two of Medina's co-defendants and a separately indicted co-conspirator testified. Based on that testimony of those three witnesses, Judge Evans concluded that the quantity of cocaine Medina was presumed to be responsible for in setting a sentencing range of 135 to 168 months in his plea agreement (144 kilos) grossly understated his actual involvement (400+ kilos). Overruling Medina and the government's objections as to drug quantity and other issues, Judge Evans indicated that she viewed the appropriate guideline sentencing range as 262 to 327 months. [Doc. No. 271]. At that point, Medina withdrew his guilty plea. [Id.; see also Doc. No. 253]. A trial date was set and then continued at Medina's request. [Doc. Nos. 256, 275, 276].

In October 2010, Medina entered into a second plea agreement. Medina's second plea agreement contained language waiving his direct appeal and collateral attack rights that was identical to the language included in his first plea agreement. Compare [Doc. No. 234-1 at 9] with [Doc. No. 284-1 at 11]. Medina's second plea agreement, unlike his first, did not give him the right to withdraw it if he was dissatisfied with the sentencing range that Judge Evans determined to be applicable, but it did give him the possibility of receiving a downward departure for providing substantial assistance. [Doc. No. 284-1 at 7].

3

Because the terms of the appeal waiver are important, they are quoted in full here:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or a variance from the sentencing Guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

[284-1 at 11; 234-1 at 9 (same)]. In addition, Medina separately signed an acknowledgment that he had "read the foregoing Plea Agreement and ha[d] carefully reviewed every part of it with [his] attorney," that he understood it, that he voluntarily agreed with it, and that in particular he had "discussed with [his] attorney the rights [he might] have to appeal or challenge [his] conviction and sentence, and . . . underst[ood] that the appeal waiver contained in the Plea Agreement [would] prevent [him], with the narrow exceptions stated, from appealing [his] conviction and sentence or challenging [his] conviction and sentence in any post-conviction proceeding." [Id. at 13].[1]

---

[1] Medina is fluent in English and does not require a translator. See [Doc. No. 324 at 2]. Because the waiver

4

It is worth noting that at the time Medina entered into his second plea agreement, he knew precisely what guideline sentencing range Judge Evans had in mind, because his PSR had already been prepared and his retained counsel had already had the opportunity to argue his objections to the PSR.[2] At his second sentencing hearing, there were no surprises. Judge Evans offered Medina's counsel an opportunity to restate his prior objections and to offer any new objections. The government recommended a sentence at the bottom of the guideline range, and that is what Judge Evans imposed, sentencing Medina to a 262-month term of imprisonment. [Doc. No. 316].

Medina did not appeal, but instead filed the § 2255 motion that is now before the Court. In the 49 pages that comprise Medina's § 2255 motion, memorandum, amendment to memorandum, and reply, he raises a host of issues. But, as noted in the introduction of this Final Report and Recommendation, the dispositive issue in this case is whether Medina's entry into his

---

of appeal language in Medina's two plea agreements is identical, he had many months to review it and discuss its import with retained counsel.

[2] Typically, federal criminal defendants tender pleas of guilty before their PSRs are prepared and their objections to the PSR are considered and ruled upon, and before they are sentenced.

5

second plea agreement - including the waiver of direct appeal and collateral attack rights - was knowing and voluntary.

In the Eleventh Circuit, "sentence appeal waivers, made knowingly and voluntarily, are enforceable." United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (sentence appeal waiver enforced in a collateral proceeding). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues - indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). Such waivers are upheld where "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of that waiver." Bushert, 997 F.2d at 1351. Those requirements are met in this case.

The argument that Medina makes most emphatically regarding his plea is that it was unknowing and involuntary because he was not specifically advised during either plea colloquy that he was waiving his collateral attack rights. See [Doc. No. 322 at 2-5; Doc. No. 327 at 2-5]. But the Supreme Court has been unequivocal that "formal violations" of Rule 11 standing alone do not warrant collateral relief. Timmreck v. United States, 441 U.S. 780, 783-84

6

(1979). To the extent that a claim for collateral relief might lie where the Rule 11 error resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure," that obviously has not occurred in this case. Id. at 784. See also United States v. Vonn, 535 U.S. 55, 63-64 (2002) (noting "there is no question of Timmreck's validity in the aftermath of the 1983 Amendments" adding Rule 11(h)).

The appeal and collateral attack waiver language in both of Medina's plea agreements along with Medina's signed acknowledgments that he understood and had discussed the waiver language with his attorney further militate against the grant of collateral relief here. Since deciding Timmreck, the Supreme Court has further held that "a district court's failure to advise the defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission." Peguero v. United States, 526 U.S. 23, 24 (1999). There is no question that Medina agreed in writing - twice - to waive his appeal and collateral attack rights and that he acknowledged - twice - that he knew, understood, and had discussed with his attorney those waivers.

Medina argues in the alternative that his plea agreement was not entered into knowingly and voluntarily because his retained counsel never conveyed to him an early offer from the government

7

that would purportedly have allowed him to plead guilty and receive a 108-month sentence. E.g., [Doc. No. 320-1 at 2, 14-15]. Given that the record reflects that Judge Evans rejected Medina's first written plea agreement that called for a 135 to 168 month sentence, it is beyond question that a more lenient plea agreement calling for a 108-month sentence would also have been rejected, had he accepted such an offer. In this case, there is no "reasonable probability the plea would have been entered into without . . . the trial court refusing to accept it," and , therefore, Defendant cannot show any prejudice from the alleged failure by counsel, if such a failure occurred. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012).

Medina also complains that his retained attorney should have demanded that the government delete the waiver of appeal and collateral attack rights from his second plea agreement. See [Doc. No. 320-1 at 15]. But such waivers are standard provisions in plea agreements in the Northern District of Georgia and elsewhere, and Medina has not alleged that there is any evidence the government would have agreed to such a deviation from the standard practice in connection with Defendant's plea agreements. See Missouri v. Frye, 132 S. Ct. at 1409 ("Defendants must demonstrate a reasonable probability the plea would have been entered into without the prosecution canceling it"). Furthermore, as stated above,

8

Defendant agreed to the waiver when he accepted the agreements. In any event, it is clear that Medina's counsel did aggressively negotiate to obtain additional concessions from the government, after the first plea agreement was rejected, including the possibility that Medina might benefit from a downward departure under U.S.S.G. 5K1.1 or Rule 35 if he provided substantial assistance. See [Doc. No. 284-1 at 7]. That Medina has failed to provide substantial assistance cannot be ascribed to "ineffective assistance of counsel" or used to bootstrap a claim that he did not knowingly and voluntarily enter into the second plea agreement.

Because none of Medina's arguments that his acceptance of the second plea agreement was unknowing or involuntary has any merit, the waiver of appeal and collateral attack rights in his plea should be found to be enforceable. As a result, all other grounds for relief in Medina's § 2255 motion have been waived.

Because the record is already sufficient to address Medina's claims, the undersigned **RECOMMENDS** that Medina's § 2255 motion be **DISMISSED** without a hearing, based upon the appeal/collateral attack waiver in his plea agreement. See Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (holding "mere conclusory allegations" in a § 2255 motion do not entitle him to an evidentiary hearing) (citing cases).

9

In a § 2255 proceeding, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. § 2255, Rule 11(a). A § 2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a § 2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations and quotation marks omitted); see also Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.") (internal quotation

10

marks omitted)). Medina has not demonstrated that he is entitled to federal habeas relief on the basis that his guilty plea was not knowing and voluntary, that the appeal/collateral attack waiver is not enforceable, or that either issue is reasonably debatable. The undersigned therefore **RECOMMENDS** that a Certificate of Appealability be **DENIED** in this case.

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

**SO RECOMMENDED AND DIRECTED**, this 29th day of October, 2012.

>***S/ E. Clayton Scofield III***
> E. CLAYTON SCOFIELD III
> UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)